IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERIC WAGNER and PAMELA WAGNER, )
husband and wife for themselves )
and all others similarly )
situated, )
                         )
          Plaintiffs, )
                         )
     vs. ) Civil Action No. 09-971
                         )
FUTURE PLANNING ASSOCIATES, )
INC., t/d/b/a USI AFFINITY, )
                         )
         Defendant. )

**MEMORANDUM**

**I. INTRODUCTION**

In this civil action, Plaintiffs, Eric Wagner (individually, "Mr. Wagner") and Pamela Wagner (individually, "Mrs. Wagner"), on behalf of themselves and all other similarly situated individuals, assert claims against Defendant, Future Planning Associates, Inc., for breach of contract, violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201.1 et seq, breach of fiduciary duty and unjust enrichment. Presently before the Court is Defendant's motion to dismiss Plaintiffs' complaint for failure to state a claim upon which relief may be granted under Fed.R.Civ.P. 12(b)(6). For reasons which follow, the motion to dismiss will be granted in part and denied in part.

## II. **FACTUAL ALLEGATIONS**

In summary, Plaintiffs' class action complaint alleges the following facts:

Mrs. Wagner is a member of the American Federation of Teachers ("AFT"). Mr. Wagner is her spouse. Prior to the spring of 2006, AFT members and their spouses were given the opportunity to purchase disability insurance. AFT members and their spouses were responsible for making all premium payments for this insurance. Plaintiffs took advantage of the opportunity and purchased a policy of disability insurance for Mr. Wagner which was underwritten by North American Life and Casualty Company ("North American"). On March 4, 2006, Mr. Wagner paid a premium of $101.40 for the disability insurance policy which covered the period beginning March 1, 2006 and ending May 31, 2006. (Complaint, Exh. 1).

In the spring of 2006, the disability insurance offered to AFT members and their spouses was modified. Mr. Wagner was notified of the modification by a form letter which stated that the underwriter of the disability insurance was being changed from North American to Metropolitan Life Insurance Company ("MetLife"), effective May 1, 2006. The form letter also stated that premium payments for the disability insurance were to be made through Defendant which was identified as the plan administrator. (Complaint, Exh. 2). Subsequently, Mr. Wagner

2

received, and paid, invoices for the premiums due for the periods
June 1, 2006 to September 1, 2006; September 1, 2006 to December
1, 2006; December 1, 2006 to March 1, 2007; March 1, 2007 to June
1, 2007; and June 1, 2007 to September 1, 2007.  (Complaint,
Exhs. 3-7).

In August 2007, Mr. Wagner received an invoice for the
disability insurance premium due for the period September 1, 2007
to December 1, 2007.  Under the caption "Additional Information,"
the invoice stated:

> Please be advised that spouses are ineligible for disability
> coverage under the MetLife Plan.  If you are a spouse of an
> AFT member, please call 888/423-8700 to receive a refund of
> premiums paid.  Please note: claims will not be processed
> for spouses of AFT members.

(Complaint, Exh. 8).[1]

The foregoing statement was the first notice that spouses of AFT
members, including Mr. Wagner, were not eligible for the
disability insurance underwritten by MetLife.  After reading the
notice, Mr. Wagner contacted Defendant to confirm its accuracy,
and he was informed that disability insurance coverage had not
been provided to spouses of AFT members since May of 2006.

Mr. Wagner turned 60 years of age in February 2007.  As a
result, it is impossible for Mr. Wagner to obtain replacement
disability insurance except at a cost far greater than if he had

---

[1] All of the invoices for disability insurance received by
Mr. Wagner after the change in underwriters contained the logo of
the AFT on the top.  (Complaint, Exhs. 3-8).

3

purchased disability insurance at the age of 59. In fact, Mr. Wagner attempted to purchase an individual disability insurance policy from MetLife after learning that he had not been covered since May 2006, and he was denied coverage due to his age.

The failure of Defendant to notify spouses of AFT members that their disability insurance coverage had ceased in May 2006 was a "sales scheme." Defendant's misrepresentations and omissions violated "numerous applicable regulations and statutes prohibiting the collection of premium payments and not providing any coverage in return." Defendant acted in reckless disregard of the rights of Mr. Wagner and other similarly situated spouses of AFT members by collecting premium payments for disability insurance policies which did not exist.

## III. STANDARD OF REVIEW

When ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the Court must accept the allegations in the complaint as true, read those allegations in the light most favorable to the plaintiff, and determine whether a reasonable reading indicates that relief may be warranted. Umland v. PLANCO Financial Service, Inc., 542 F.3d 59, 64 (3d Cir.2008). Conclusory or "bare bones" allegations will not survive a motion to dismiss. To prevent dismissal, a civil complaint must set out sufficient factual matter to show that a claim is facially

4

plausible.  <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009)

Under Fed.R.Civ.P. 12(d), if matters outside the pleading are presented and not excluded by the Court on a Rule 12(b)(6) motion, the motion must be treated as a motion for summary judgment under Fed.R.Civ.P. 56.  An exception to this rule exists, however, when the documents presented are integral to or explicitly relied upon in the complaint.  <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1426 (3d Cir.1997).  Because the documents attached to Plaintiffs' complaint are integral to their claims and explicitly relied upon, the documents may be considered by the Court without converting the present motion to a motion for summary judgment.

## IV. DISCUSSION

### Breach of Contract

The first element which must be established by a plaintiff asserting a breach of contract claim under Pennsylvania law is the existence of a contract.  <u>Ware v. Rodale Press, Inc.</u>, 322 F.3d 218, 225 (3d Cir.2003).  In order for an enforceable agreement to exist, there must be a "meeting of the minds," whereby both parties mutually assent to the same thing, as evidenced by an offer and its acceptance.  <u>Mountain Properties, Inc. v. Tyler Hill Realty Corp.</u>, 767 A.2d 1096, 1101 (Pa.Super. 2001).

Plaintiffs' breach of contract claim against Defendant is based on the two-page form letter sent to Mr. Wagner in the spring of 2006 regarding the change in underwriters for the AFT disability insurance program at issue. (Complaint, Exh. 2). Plaintiffs allege that the form letter constituted an offer by Defendant to procure disability insurance coverage for spouses of AFT members who were not AFT members themselves, which was accepted by Mr. Wagner as evidenced by his payment of the premiums for the coverage.[2]  After consideration, the Court agrees with Defendant that the form letter cannot be construed as an offer by Defendant "to procure and maintain disability insurance for Mr. Wagner," as argued by Plaintiffs. (Pls' Brief in Opp., p. 11). Thus, Plaintiffs have failed to state a claim against Defendant for breach of contract.[3]

---

[2]Specifically, Plaintiffs' complaint alleges that Defendant "offered to have disability insurance provided to the spouses of AFT members underwritten by MetLife," and that Mr. Wagner "accepted the offer and made all quarterly premium payments required of him until learning that no disability insurance coverage was provided." (Complaint, ¶¶ 71-72). The complaint further asserts that by failing to provide disability insurance, despite sending invoices and collecting premium payments, Defendant "breached its duties under the contract with [Mr. Wagner and similarly situated spouses of AFT members], causing substantial damage (sic) the victims of this deceptive sales tactic." (Complaint, ¶ 74).

[3]Initially, Defendant argued that Plaintiffs failed to state a claim for breach of contract due to the absence of an insurance contract between Mr. Wagner and Defendant. In response to this argument, Plaintiffs indicated that Defendant had misconstrued the breach of contract claim, stating that they are not alleging breach of an insurance contract. (Pls' Brief in Opp., p. 10).

6

First, contrary to Plaintiffs' statement in paragraph 19 of
the Complaint, the logos printed on the top of the first page of
the form letter were those of the AFT and MetLife, not Defendant
and MetLife.  Second, contrary to Plaintiffs' statement in
paragraph 18 of the Complaint, the form letter did not inform AFT
members that "spouses of AFT members were offered disability
insurance through MetLife that was to be paid for solely by the
spouses and/or the individual members."  Although the form letter
is addressed to Mr. Wagner, the salutation is "Dear AFT Member"
and the letter states, among other things, that "[i]n an effort
to continually offer quality affordable benefit programs **to our
members**, we are pleased to inform you that as of May 1, 2006,
your disability income plan will be underwritten by [MetLife]."
(Emphasis added).  The form letter does not mention spouses of
AFT members.  Third, the form letter clearly identifies Defendant
as the administrator of the AFT's disability insurance plan, not
the procurer or provider.  After setting forth answers to
anticipated questions concerning the change in underwriters, the
form letter specifically directed any remaining questions to
Defendant, "the new plan administrator."  In addition, in the
event a disability commenced on or after May 1, 2006, the form

---

Thus, the only argument to be addressed in connection with
Defendant's motion to dismiss the contract claim relates to
whether the form letter and Mr. Wagner's payment of premiums for
disability insurance coverage by MetLife created an enforceable
contract between the parties.

letter indicated that claims were to be filed "with [the AFT's] administrative offices at Future Planning Associates."

With regard to Plaintiffs' citation of <u>Al's Café, Inc. v. Sanders Ins. Agency</u>, 820 A.2d 745 (Pa.Super.2003), to support their breach of contract claim, the Court agrees with Defendant that their reliance on this decision is misplaced because the analysis of the Superior Court of Pennsylvania is limited to a claim for negligent misrepresentation. (Df's Reply Brief, pp. 5-6). Moreover, the defendants in <u>Al's Café</u> were sellers of insurance who have a duty under Pennsylvania law not to misrepresent the coverage procured for a client.[4]  Because there is no allegation (or argument) that Defendant is a seller of insurance, the decision in <u>Al's Café</u> has no applicability in this case.

In sum, although the form letter is signed by a representative of Defendant in her capacity as Defendant's Director of Benefit Services, the form letter simply cannot be construed as an offer by Defendant to procure or provide disability insurance for Mr. Wagner who, admittedly, is not an

---

[4]In <u>Al's Café</u>, the Superior Court of Pennsylvania held that, as an apparent matter of first impression, the recognized duty of insurance agents and brokers to act with reasonable care, skill and judgment extends to the selection of an insurer, to ascertaining whether an insurer is reputable and financially sound, and to informing an insured of his or her findings if an investigation reveals evidence of financial infirmity, but the agent or broker nonetheless intends to place the policy with that insurer.

AFT member.  Accordingly, Plaintiffs' breach of contract claim
will be dismissed.  Further, because the complaint and its
exhibits establish that an enforceable agreement between Mr.
Wagner and Defendant does not exist, Plaintiffs will not be given
an opportunity to amend their breach of contract claim due to
futility.  See Phillips v. County of Allegheny, 515 F.3d 224, 245
(3d Cir.2008), citing, Alston v. Parker, 363 F.3d 229, 235 (3d
Cir.2004)(A district court must provide a plaintiff with the
opportunity to amend a complaint that is dismissed pursuant to
Fed.R.Civ.P. 12(b)(6), unless such an amendment would be
inequitable or futile).

**UTPCPL**

The UTPCPL prohibits "unfair competition" and "unfair or
deceptive acts or practices" in the conduct of any trade or
commerce, 73 P.S. § 201-3, and the statute creates a private
right of action in any person who purchases or leases goods or
services primarily for personal, family or household purposes and
suffers any ascertainable loss of money or property as a result
of a method, act or practice declared unlawful.[5]  73 P.S. § 201-
9.2.  The UTPCPL lists 20 specific "unfair methods of
competition" and "unfair or deceptive acts or practices."  73

---

[5]The UTPCPL also authorizes "public interest" suits by the
Attorney General or a District Attorney to restrain any person
who is using or is about to use any method, act or practice
declared unlawful by the statute.  73 P.S. § 201-4.

P.S. § 201-2(4)(i)-(xx).  The statute also includes a catchall

provision which prohibits "engaging in any other fraudulent or

deceptive conduct which creates a likelihood of confusion or

misunderstanding."  73 P.S. § 201-2(4)(xxi).

In addition to the catchall provision, Plaintiffs allege

that Defendant engaged in the following acts prohibited by the

UTPCPL:

**§ 201-2.  Definitions**

As used in this act.

\*    \*    \*

**(4) "Unfair methods of competition"** and **"unfair or deceptive acts or practices"** mean any one or more of the following:

\*    \*    \*

(ii) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;

(iii) Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another;

\*    \*    \*

(v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;

\*    \*    \*

(vii) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;

10

\* \* \*

(ix) Advertising goods or services with intent not to sell them as advertised;

\* \* \*

(xiv) Failing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made;

(xv) Knowingly misrepresenting that services, replacements or repairs are needed if they are not needed;

\* \* \*

(Complaint, p. 16, ¶ 76).

To establish a claim under the UTPCPL, a plaintiff must prove the traditional elements of common law fraud.  Toy v. Metropolitan Life Ins. Co., 928 A.2d 186 (Pa.2007); Weinberg v. Sun Co., Inc., 777 A.2d 442 (Pa.2001).  These elements include (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.  Gibbs v. Ernst, 647 A.2d 882 (Pa.1994).

Defendant maintains that Plaintiffs have failed to adequately plead fraud in connection with their UTPCPL claim under the pleading standards enunciated in Bell Atlantic Corp. v.

11

Twombly, 550 U.S. 544 (2007), and its progeny,[6] as well as Fed.R.Civ.P. 9(b).[7]  After consideration, the Court agrees.

As noted by Defendant, none of the exhibits attached to Plaintiffs' complaint on which their claims are based contains a representation by Defendant (or any other person or entity) that spouses of AFT members were eligible for the disability insurance program to be underwritten by MetLife.  (Df's Reply, p. 8). Thus, Plaintiffs have failed to plead the first element of a common law fraud claim.  As further noted by Defendant, even if the exhibits attached to the complaint could be construed as a representation by Defendant that Mr. Wagner was eligible for the disability insurance program to be underwritten by MetLife, the complaint fails to allege that Defendant knew this representation was false when it was made.  (Df's Reply, p. 8).  Accordingly, Plaintiffs also have failed to plead the second element of a

---

[6]In Twombly, the United States Supreme Court abrogated the oft-repeated standard for dismissal of a complaint under Fed.R.Civ.P. 12(b)(6) enunciated in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), i.e., that a complaint may not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Following Twombly, a plaintiff must "nudge[]" [his or her] claims across the line from conceivable to plausible" in order to survive a motion to dismiss for failure to state a claim.

[7]With regard to claims of fraud, Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud," and this standard applies to claims under the UTPCPL. See In re Balko, 348 B.R. 684 (W.D.Pa.2006)(Heightened pleading standard for averments of fraud established by federal rule applied to claims alleging violations of the UTPCPL).

common law fraud claim.[8]   Finally, the Court notes that the

complaint and its exhibits establish no basis for a finding that

Plaintiffs justifiably relied on the alleged misrepresentation by

Defendant that spouses of AFT members were eligible to

participate in the disability insurance plan to be underwritten

by MetLife.   As noted previously, the form letter sent to Mr.

Wagner in the spring of 2006 regarding the change in underwriters

fails to mention spouses of AFT members.   Under the

circumstances, Plaintiffs' complaint also is deficient with

regard to pleading the fourth element of common law fraud.

With respect to providing Plaintiffs with an opportunity to

amend their UTPCPL claim, the Court concludes that any amendment

would be futile.   As noted previously, a claim under the UTPCPL

is available only to purchasers or lessors of goods or services

used primarily for personal, family or household purposes.

Zerpol Corp. v. DMP Corp., 561 F.Supp. 404 (E.D.Pa.1983).   In

Com., by Creamer v. Monumental Properties, Inc., 329 A.2d 812

(Pa.1974), the Pennsylvania Supreme Court noted that the UTPCPL

---

[8]The Court also notes its agreement with Defendant that "the
facts pleaded in the complaint are entirely consistent with the
theory that Defendant mistakenly thought at the relevant times
that Erik Wagner was covered by the subject policy."   (Df's
Reply, p. 8).   As the Supreme Court recently noted in Ashcroft v.
Iqbal, __ U.S. __, 129 S.Ct. 1937 (2009), "where the well-pleaded
facts do not permit the court to infer more than the mere
possibility of misconduct, the complaint has alleged - but it has
not 'show[n]" - that the pleader is entitled to relief.   Id. at
1950, citing Fed.R.Civ.P. 8(a)(2).

"attempts to place on more equal terms seller and consumer."  Due to the absence of any allegation or argument that Defendant is a seller of insurance, Plaintiffs are precluded from asserting a claim against Defendant under the UTPCPL and leave to amend this claim will be denied as futile.  See, e.g., Schroeder v. Acceleration Life Ins. Co. of Pennsylvania, 972 F.2d 41 (3d Cir. 1992)(UTPCPL prohibits seller of goods and services from engaging in any fraudulent conduct which creates likelihood of confusion or misunderstanding); Fisher v. Aetna Life Ins. & Annuity Co., 39 F.Supp.2d 508 (M.D.Pa.1998), affirmed, 176 F.3d 472 (3d Cir. 1999), cert. denied, 528 U.S. 816 (1999)(Under Pennsylvania law, an insurer can be held liable for consumer fraud under UTPCPL only if there are fraudulent misrepresentations by insurer in order to sell a policy); Brownell v. State Farm Mut. Ins. Co., 757 F.Supp. 526 (E.D.Pa. 1991)(Insured did not state cause of action under UTPCPL against insurance claim auditing service, for allegedly conspiring with insurer to deny medical coverage benefits for motor vehicle accidents involving soft tissue injuries; requisite privity of contract or commercial relationship between insured and auditing service was not present); DeFazio v. Gregory, 836 A.2d 935 (Pa.Super.2003)(A "seller" under the UTPCPL is one that offers for sale, whereas a "consumer" is one that utilizes economic goods); Elia v. Erie Ins. Exchange, 581 A.2d 209 (Pa.Super.1990)(UTPCPL did not create

14

cause of action in favor of insurance claimant against insurer's examining physician who reported that claimant was able to return to work and was malingering, resulting in termination of medical and wage loss benefits, where claimant did not purchase services or goods from physician); Edkin v. The Travelers Companies, 3 Pa.D.&C.4th 557 (1988)(A cause of action did not exist under UTPCPL against the servicing carrier of Plaintiff's claim for insurance benefits under Pennsylvania's Financial Responsibility Assigned Claims Plan for its alleged negligent handling of the claim since there was no seller-consumer relationship between claimant and servicing carrier).

**Breach of Fiduciary Duty**

A fiduciary duty arises in principal-agent relationships. Specifically, an "agent is subject to a duty of loyalty to act only for the principal's benefit." Basile v. H & R Block, Inc., 761 A.2d 1115, 1120 (Pa.2000), quoting, Sutliff v. Sutliff, 528 A.2d 1318, 1323 (Pa.1987). In the absence of an agency relationship, a fiduciary duty may arise as a result of a confidential relationship. Id. at 1122-23. It is this latter type of relationship on which Plaintiffs rely to assert a claim for breach of fiduciary duty against Defendant. (Pls' Brief in Opp., pp. 18-21).

The critical question in determining whether a fiduciary relationship exists between parties who are not in an agency

relationship is whether the relationship goes beyond mere reliance on superior skill and into a relationship characterized by overmastering influence on one side or weakness, dependence or trust, justifiably reposed, on the other side. A confidential relationship, and resulting fiduciary duty, is marked by such a disparity in position that the inferior party places complete trust in the superior party's advice and seeks no other counsel, so as to give rise to a potential abuse of power. eToll, Inc. v. Elias/Savion Advertising, Inc., 811 A.2d 10 (Pa.Super.2002).

In the brief filed in opposition to Defendant's motion to dismiss, Plaintiffs argue that they have averred sufficient facts in the complaint to meet the requisite elements of a confidential relationship, i.e., an "overmastering influence" by Defendant and a position of "weakness, dependence or trust" on their part. (Pls' Brief in Opp., p. 20). Contrary to this argument, a review of the complaint shows that Plaintiffs' allegations fall far short of establishing a confidential relationship between the parties.

It is clear from the complaint, its exhibits and Plaintiffs' brief in opposition to Defendant's motion to dismiss that the sole basis for Plaintiffs' claim of a confidential relationship with Defendant is the form letter sent to Mr. Wagner in the spring of 2006 regarding the change in underwriters for the AFT's disability insurance program. (Pls' Brief in Opp., p. 20). As

16

discussed earlier, however, the form letter simply cannot be construed as an agreement by Defendant to procure disability insurance for Mr. Wagner and similarly situated spouses of AFT members.  The form letter merely notified Mr. Wagner that the AFT's disability insurance program would be underwritten by MetLife effective May 1, 2006, and that Defendant had been retained to serve as the plan administrator.

Significantly, there is no allegation that Plaintiffs ever met with or talked to a representative of Defendant to discuss Mr. Wagner's participation in the disability insurance program offered by the AFT.  In the absence of some direct contact between the parties, it is difficult to understand how Plaintiffs can argue that they placed "complete trust" in Defendant in connection with Mr. Wagner's purchase of disability insurance through the AFT program.  Under the circumstances, the Court concludes that Plaintiffs have failed to state a claim against Defendant for breach of fiduciary duty and leave to amend the claim will be denied as futile.

**Unjust Enrichment**

In the event the Court concluded that no oral or written contract existed between Mr. Wagner and similarly situated spouses of AFT members and Defendant, Plaintiffs asserted an alternative claim against Defendant for unjust enrichment.  In summary, Plaintiffs allege that Defendant has been unjustly

17

enriched through the collection of premium payments for disability insurance coverage which was never provided to Mr. Wagner and similarly situated spouses of AFT members, and that Defendant should "be compelled to disgorge this benefit, any profit thereon and/or interest." (Complaint, ¶¶ 107-110).

Defendant seeks the dismissal of Plaintiffs' claim for unjust enrichment noting that although the complaint appears to suggest that Defendant retained the premiums paid by Mr. Wagner, Defendant merely administered the AFT-MetLife disability insurance program and "[t]he premiums were obviously forwarded to MetLife, the insurance company." Defendant further notes that the invoice for the premium payment due for the period September 1, 2007 to December 1, 2007, specifically directed spouses of AFT members to contact Defendant for a refund of any premiums paid. (Df's Brief in Support, p. 14).

In response, Plaintiffs assert that they believe Defendant retained the premium payments at issue, "despite Defendants (sic) bald assertions unsupported by any pleading and outside the present Record in this case, that Defendant forwarded the payments to MetLife." Plaintiffs further assert that "Defendants (sic) position that they (sic) returned the payments, after the receipt of multiple payments and many months, does not excuse their (sic) failure to pay interest on the wrongly procured and held funds to the Plaintiffs." (Pls' Brief in Opp., p. 22).

In reply, Defendant asserts that the Court can take judicial notice that a plan administrator does not keep the insured's premium payments, and that Plaintiffs' position on this issue "is not even remotely 'plausible' under Twombly and its progeny." (Df's Reply Brief, p. 11).  With respect to Plaintiffs' argument that Defendant has been unjustly enriched because it failed to pay interest on the retained premium payments, Defendant submitted a copy of a canceled check showing that Mr. Wagner cashed an interest check from Defendant.  (Df's Reply Brief, Exh. A).

After consideration, the Court is compelled to conclude that the unjust enrichment claim may not be dismissed at this stage of the proceedings.  As a result, the motion to dismiss this claim will be denied without prejudice to the right of Defendant to file a motion for summary judgment after pertinent discovery has been completed.

**Pamela Wagner**

Defendant also moved to dismiss Mrs. Wagner from this case, arguing that she did not have any legally cognizable claim.  This aspect of Defendant's motion has been rendered moot with regard to the first three counts of the complaint based on the Court's conclusion that these counts fail to state claims upon which relief may be granted and that any attempt to amend these claims would be futile.  However, the argument must be addressed in

19

connection with unjust enrichment claim asserted in Count IV of the complaint.

In response to the motion to dismiss Mrs. Wagner from this case, Plaintiffs argue that Mrs. Wagner has standing to pursue claims against Defendant because she qualifies as a necessary party under Fed.R.Civ.P. 19(a)(1)), which provides:

**Rule 19.   Required Joinder of Parties**

**(a) Persons Required to Be Joined if Feasible.**

> **(1) Required Party.**  A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
>> **(A)** in that person's absence, the court cannot accord complete relief among existing parties; or
>>
>> **(B)** that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>>
>>> **(i)** as a practical matter impair or impede the person's ability to protect the interest; or
>>> **(ii)** leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

*   *   *

After consideration, the Court finds Plaintiffs' argument regarding Mrs. Wagner's standing unpersuasive.

The damages allegedly sustained by Mrs. Wagner as a result of Defendant's failure to procure disability insurance coverage

for Mr. Wagner are identical to the damages he allegedly sustained as a result of this failure.[9]  Consequently, complete relief may be accorded in Mrs. Wagner's absence; any interest that Mrs. Wagner may have in this litigation will be protected by her husband; and there is no basis for a finding that Mrs. Wagner's absence from this litigation will subject Defendant to a substantial risk of incurring double, multiple or otherwise inconsistent obligations.  Under the circumstances, Defendant's motion to dismiss Mrs. Wagner as a plaintiff in this case will be granted.

## V. CONCLUSION

Based on the foregoing conclusions, Mr. Wagner will be directed to file an amended complaint that is limited to a claim against Defendant for unjust enrichment.

_William L. Standish_

William L. Standish
United States District Judge

Date: February _11_, 2010

_____

[9]Specifically, Plaintiffs assert that the premiums for Mr. Wagner's disability insurance policy through the AFT program were paid from marital assets; that Mrs. Wagner may sustain damages in the event Mr. Wagner is unable to purchase replacement disability insurance due to his age and becomes disabled; and that, even if Mr. Wagner is able to purchase a replacement disability insurance policy, Mrs. Wagner will sustain damages because the premiums, which would be paid out of marital assets, will increase significantly due to Mr. Wagner's age.  (Pls' Brief in Opp., pp. 6-7).